IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY LATTA, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> ) <br> CITY OF PITTSBURGH, PAUL ABEL, ) <br> THOMAS GAULT, JOHN DOE # 1, ) <br> JOHN DOE # 2, JOHN DOE # 3 ) <br> and JOHN DOE # 4, ) <br> ) <br> Defendants ) | CIVIL ACTION NO.  2:21-cv-38 <br><br> **JURY TRIAL DEMANDED** |

**VERIFIED CIVIL ACTION COMPLAINT**

### I. INTRODUCTORY STATEMENT

1. On June 1, 2020, Plaintiff Kimberly Latta ("Latta"), then 59-years-old, was assaulted, criminally prosecuted and subjected to the violation of her fundamental constitutional rights while being peacefully and lawfully present at the site of a demonstration.

2. The demonstration of June 1, 2020 served as a protest against the police killings of George Floyd and other persons of color, as well as continuing systemic racial injustice.

3. Latta was physically assaulted and subjected to a noxious gas/chemical agent by Defendants.

4. The criminal charges brought against Latta were baseless, without probable cause and were dismissed at the preliminary hearing stage.

5. This civil rights lawsuit is brought to establish the legal liability of those individuals who directed their violence, excessive force, outrageous conduct and unwarranted use

1

of the criminal justice system against Latta. The suit also seeks to establish the responsibility of the municipal Defendant for its lack of proper training, supervision and oversight of its police officers in matters relating to the use of force and use of legal process against peaceful demonstrators.

6. Defendants' policies, procedures, practices, actions and treatment of Latta, as more fully detailed in the body of this Verified Complaint, resulted in the violation of Latta's First and Fourth Amendment rights, as made applicable to the states and state actors, including Defendants, by the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

7. Latta seeks the full panoply of remedies available for the violation of her rights, including an award of declaratory and injunctive relief, compensatory and punitive damages and such other relief as is deemed necessary and/or appropriate.

## II. JURISDICTION

8. The jurisdiction of this court to adjudicate Latta's claims is premised upon 28 U.S.C. §§1331 and 1343, which concern the original jurisdiction of district courts over federal questions and cases alleging federal civil rights violations.

9. Additionally, the court has jurisdiction to declare the rights of the parties to this action pursuant to 28 U.S.C. §§ 2201 and 2202.

## III. PARTIES

10. Plaintiff Kimberly Latta is an adult resident of Pittsburgh, Pennsylvania.

11. Defendant City of Pittsburgh is a political subdivision of the Commonwealth of Pennsylvania existing and operating pursuant to the laws of the Commonwealth. The central

administrative offices for the City of Pittsburgh are located at 414 Grant Street, City–County Building, Pittsburgh, Pennsylvania, 15219.

12. Defendant Paul Abel is an adult individual. Defendant Abel's home address is unknown. At the time of the events giving rise to this action, Defendant Abel was employed as a City of Pittsburgh police officer. It is believed that Defendant Abel was assigned to work out of the City's Zone 6 police station, which is located at 312 S. Main Street, Pittsburgh, PA 15220.

13. Defendant Thomas Gault is an adult individual. Defendant Gault's home address is unknown. At the time of the events giving rise to this action, Defendant Gault was employed as a City of Pittsburgh police officer. It is believed that Defendant Gault was assigned to work out of the City's Zone 6 police station, which is located at 312 S. Main Street, Pittsburgh, PA 15220.

14. Defendant John Doe # 1 is an adult individual. Defendant John Doe # 1's actual name and home address are unknown. At the time of the events giving rise to this action, Defendant John Doe # 1was employed as a City of Pittsburgh police officer. John Doe # 1's assigned Zone and business address are also unknown. The central administrative offices of the City of Pittsburgh Police Department are located at 1501 Brighton Road, Pittsburgh, PA 15212.

15. Defendant John Doe # 2 is an adult individual. Defendant John Doe # 2's actual name and home address are unknown. At the time of the events giving rise to this action, Defendant John Doe # 2was employed as a City of Pittsburgh police officer. John Doe # 2's assigned Zone and business address are also unknown. The central administrative offices of the City of Pittsburgh Police Department are located at 1501 Brighton Road, Pittsburgh, PA 15212.

16. Defendant John Doe # 3 is an adult individual. Defendant John Doe # 3's actual name and home address are unknown. At the time of the events giving rise to this action, Defendant John Doe # 3was employed as a City of Pittsburgh police officer. John Doe # 3's assigned Zone and business address are also unknown. The central administrative offices of the City of Pittsburgh Police Department are located at 1501 Brighton Road, Pittsburgh, PA 15212.

17. Defendant John Doe # 4 is an adult individual. Defendant John Doe # 4's actual name and home address are unknown. At the time of the events giving rise to this action, Defendant John Doe # 4was employed as a City of Pittsburgh police officer. John Doe # 4's assigned Zone and business address are also unknown. The central administrative offices of the City of Pittsburgh Police Department are located at 1501 Brighton Road, Pittsburgh, PA 15212.

## IV.   FACTS

18. George Floyd, an unarmed 46-year-old African-American man, was killed by a white police officer who knelt on Mr. Floyd's neck for eight minutes and 46 seconds on May 25, 2020 in Minneapolis, Minnesota.

19. The killing of George Floyd and other persons of color by law enforcement officers led to demonstrations and protests in cities and towns across the United States.

20. The City of Pittsburgh was among the cities and towns experiencing demonstrations in the wake of George Floyd's killing. Demonstration participants protested police violence against and killing of members of minority communities around the country.

21. The majority of demonstrations following George Floyd's death were peaceful and the vast majority of people participating in the demonstrations conducted themselves peacefully and lawfully. This was also true for the demonstrations in the City of Pittsburgh.

22. A demonstration was held in the East Liberty neighborhood of the City of Pittsburgh during the evening of June 1, 2020 - five days after the slaying of George Floyd.

23. Latta is a 60-year-old woman who lives in the City of Pittsburgh, not far from the site of the June 1, 2020 East Liberty demonstration.

24. Wanting to join with, add her voice to and show her support for those protesting police violence against minorities and the continuing racism in the United States, Latta rode her bicycle down Highland Avenue to East Liberty shortly after 7:00 p.m. on June 1, 2020.

25. Latta observed an overwhelming and militarized police presence as she approached the corner of Highland and Centre Avenues. When she tried to turn right onto Centre Avenue, her way was barred by a contingent of plain clothed individuals and police officers.

26. One of the police officers barring Latta from heading west on Centre Avenue toward Negley Avenue, pushed Latta with a shield.

27. Ms. Latta had broken no law and was conducting herself in a peaceful manner when she was barred from traveling on the public thoroughfare and struck by a police officer using her shield.

28. After Latta was barred from reaching Negley Avenue, she turned back and went to the area of the intersection of Highland and Centre Avenues, where she joined other peaceful protesters on or about the curb and sidewalk.

29. Latta sat down peacefully on the curb.

30. Latta was able to observe a large group of police officers organize into what appeared to her to be a military style phalanx that then began marching toward where she peacefully sat in what Defendant Abel has described as "Indian style."

5

31. Defendant Gault is a City of Pittsburgh Police Department Lieutenant. He was supervising a number of police officers assigned to the June 1, 2020 East Liberty demonstration and he personally directed Defendant Abel and other police officer Defendants to move against and disrupt the peaceful protesters.

32. As she sat peacefully on the ground, a police skirmish line moved toward Latta "like a wall of giants with plastic shields and strange orange shotguns."

33. Unidentified police officers, including Defendant John Doe # 1 deployed noxious gas and/or chemical agent canisters into and/or against the peaceful protesters by shooting the canisters from a moving vehicle driven through the demonstrators. One of the canisters was deployed against Latta as she sat on or about the curb.

34. By deploying canisters containing noxious gas and/or chemical agent from a moving vehicle, John Doe # 1 could not exercise control of where the canister went or how close to Latta it would come to rest.

35. The use of noxious gas and/or chemical agents was improper, dangerous and designed to interfere with the exercise of constitutional rights by Latta and other peaceful protesters, as well as to cause them pain, discomfort and injury.

36. The use of noxious gas and/or chemical agents from mobile units and/or officers on the ground at the site of the June 1, 2020 demonstration was authorized by Defendant John Doe # 2 who knew or should have known that the deployment of such a weapon would have the effect of interfering with the exercise of constitutional rights and inflict pain, discomfort and injury.

37.     A group of police officers, including Defendant Abel, Defendant John Doe # 3, who was Defendant Abel's sergeant, and John Doe Defendant # 4, surrounded the peacefully sitting and non-resistant Latta.

38.     Latta was lifted and forcibly thrown face-down to the ground by Defendant Abel and a number of John Doe Defendants. Her arms were pulled behind her back and she was handcuffed.

39.     The gas/chemical agent deployed against Latta by John Doe # 1 had blinded her and burned her eyes. She started coughing violently and was unable to breathe.

40.     Latta's inability to breathe was so severe she feared that she might die from lack of oxygen. She lost control of her bodily functions.

41.     Surrounded, thrown to the ground and handcuffed by Defendant police officers, Latta was not free to leave the scene. Defendants Abel and John Doe # 3 informed Latta that she was under arrest.

42.     After being lifted, handcuffed, from the ground, Latta, still coughing uncontrollably and terrified for her safety, was unable to stand on her own. Defendant police officers had to hold her up to prevent her from collapsing onto the pavement.

43.     Although having been informed that she was under arrest, once Latta recovered some of her faculties, she was told by Defendants Abel and John Doe # 3 that she would not be taken to jail but, instead, would be sent a summons in the mail.

44.     Latta was permitted to leave the scene with her bicycle on her promise to go home, which she did.

45. Latta was so traumatized by her treatment at the hands of Defendants that she wept all the way home and cried herself to sleep that night. She had uncontrolled bouts of weeping the next day.

46. No order to disperse had been communicated to Latta prior to her arrest, nor was she given any warning that she would be gassed.

47. Neither Defendant Abel nor any of the other Defendant officers had probable cause or other lawful basis to come into physical contact with Latta, gas her or place her under arrest.

48. Latta and her experiences at the June 1, 2020 demonstration were the subjects of a June 15, 2020 article in the Pittsburgh Post-Gazette. The article quotes Latta as saying, in part: "It was so terrifying. . . I wanted to make a statement. I'm sitting here in a nonviolent, nonresistant way. [Officers] grabbed me by the arms and they threw me into the street."

49. Although Defendant Abel and John Doe Defendants placed Latta under arrest on June 1, 2020, a criminal complaint was not filed against her by until June 26, 2020, after her account of police conduct at the June 1 demonstration was published by the Pittsburgh Post-Gazette.

50. The criminal complaint filed against Latta identified Defendant Abel as the arresting officer.

51. The criminal complaint charged Latta with one count of misdemeanor 2 failure to disperse, one count of misdemeanor 3 disorderly conduct and one count of misdemeanor 3 obstruction of highways.

52. On June 18, 2020, more than a week before the criminal complaint was filed by Defendant Abel, authorities withdrew criminal charges against twenty-two individuals arrested during the June 1, 2020 demonstration due to the lack of evidence of criminal conduct.

53. Although Latta had broken no law, remained peaceful, did not resist arrest and had been permitted to go home, her criminal charges were not withdrawn.

54. Requests to have Latta's charges withdrawn, as the charges against twenty-two others arrested in connection with the June 1, 2020 demonstration had been withdrawn, were denied.

55. Latta avers, upon information and belief, that Defendants, knowing that they had no basis to prosecute Latta, maliciously refused to withdraw the criminal charges against her and proceeded with her prosecution, at least in part, because she went public with her story by consenting to be interviewed by a Post-Gazette reporter.

56. Latta's preliminary hearing was scheduled for August 5, 2020.

57. Latta was compelled to secure the representation of private defense counsel to ensure that her rights were protected at the preliminary hearing.

58. Defendant Abel appeared at the preliminary hearing of August 5, 2020 and testified against Latta as a prosecution witness.

59. The magisterial district judge presiding over Latta's preliminary hearing dismissed all charges after listening to Defendant Abel's testimony and the arguments of counsel.

60. The judicial dismissal of Latta's criminal charges represents a final adjudication of those charges in her favor.

9

61. The vicious, outrageous and physical force used in gassing Latta, throwing her to the ground and handcuffing her arms behind her back was unwarranted and excessive under the circumstances.

62. As a direct and proximate result of Defendants' acts and omissions, as described in this Complaint, Latta has suffered great pain, injury, distress, inconvenience, annoyance, emotional distress, embarrassment, alarm and invasion of her bodily integrity and person.

63. In an attempt to discredit demonstrators, including Latta, authorized City of Pittsburgh officials and representatives made false public statements about the conduct of the demonstrators and denied using noxious gas/chemical agents against the demonstrators.

64. Defendant City of Pittsburgh knew or should have known of the violent tendencies and/or pattern of certain City of Pittsburgh police officers, including at least one involved in the encounter with Latta, to abuse their authority and disregard the constitutional and civil rights of the public. Yet, Defendant City failed to take effective measures to protect the public, including Latta, from these individual Defendants.

65. Defendant Abel and the other Defendant officers involved in the encounter with Latta, including the John Doe Defendant who authorized the use of noxious gasses and/or chemical agents against peaceful demonstrators, were acting under color of state law at all times relevant to the events described in this Complaint.

66. The conduct of all individual Defendants, as described above, was outrageous, intentional, reckless, willful, malicious, and undertaken with deliberate disregard for the safety, welfare and clearly established rights of Latta.

67. Upon information and/or belief, Latta alleges that Defendant City of Pittsburgh failed to properly train, educate, inform, instruct and supervise the members of its police department on proper law enforcement methods and conduct when assigned to work at or around public demonstrations.

68. Upon information and/or belief, Latta alleges that Defendant City of Pittsburgh failed to properly train, educate, inform, instruct and supervise the members of its police department on the proper procedures for using noxious gas and/or chemical agents against members of the public.

69. Upon information and/or belief, Latta alleges that Defendant City of Pittsburgh failed to properly train, educate, inform, instruct and supervise the members of its police department on an acceptable continuum of force.

70. Upon information and/or belief, Latta alleges that Defendant City of Pittsburgh failed to properly train, educate, inform, instruct and supervise the members of its police department on constitutional protections concerning speech and demonstrations.

71. The individual Defendants' use of noxious gas and/or chemical agents and other force that caused injuries to Latta was a direct and foreseeable consequence of the Defendant City of Pittsburgh's lack of training, supervision, failure to adopt and implement policies and procedures and failure to protect the public from one or more of the individual Defendants with known violent propensities and/or disregard of constitutional protections.

72. The need for training and supervision of City of Pittsburgh police officers was and/or should have been plainly obvious to City of Pittsburgh policymakers.

73. The individual Defendants conduct, as described above, was pursued in accordance with policies, practices, procedures and/or customs of Defendant City of Pittsburgh

that allowed its officers to use an unwarranted degree of force against Latta and unlawfully subject her to arrest and criminal prosecution.

## V. LEGAL CLAIMS

### FIRST CAUSE OF ACTION - FOURTH AMENDMENT (EXCESSIVE FORCE)
### (All Defendants)

74. Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of Latta's rights, privileges and immunities, as secured by the Fourth and Fourteenth Amendments to the United States Constitution. Said rights, privileges and immunities include the right to bodily integrity, the right to be free from assault, excessive force and unreasonable and malicious searches, seizures and arrests.

### SECOND CAUSE OF ACTION - FOURTH AMENDMENT (FALSE ARREST)
### (All Defendants)

75. Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of Latta's rights, privileges and immunities, as secured by the Fourth and Fourteenth Amendments to the United States Constitution. Said rights, privileges and immunities include the right to bodily integrity, the right to be free from excessive force and the right to be free from false and malicious searches, seizures and arrests.

### THIRD CAUSE OF ACTION - FOURTH AMENDMENT
### (MALICIOUS PROSECUTION)
### (All Defendants)

76. Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of Latta's rights, privileges and immunities, as secured by the Fourth and Fourteenth Amendments to the United States Constitution. Said rights, privileges

and immunities include the right to bodily integrity, the right to be free from excessive force and the right to be free from unreasonable and malicious searches, seizures, arrests and prosecutions.

### SFOURTH CAUSE OF ACTION - FIRST AMENDMENT
### (All Defendants)

77. Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of Latta's rights, privileges and immunities, as secured by the First and Fourteenth Amendments to the United States Constitution. Said rights, privileges and immunities include the right to free speech and the right to peaceably assemble.

### FIFTH CAUSE OF ACTION - FIRST AMENDMENT RETALIATION
### (All Defendants)

78. Defendants' actions and omissions, as more fully described in the factual section of this Complaint, constitute violations of Latta's rights, privileges and immunities, as secured by the First and Fourteenth Amendments to the United States Constitution. Said rights, privileges and immunities include the right not to be retaliated against for the exercise of First Amendment rights.

### SIXTH CAUSE OF ACTION - FAILURE TO PROPERLY SUPERVISE TRAIN, ENACT AND IMPLEMENT POLICIES
### (Defendant City of Pittsburgh)

79. The failure of Defendant City of Pittsburgh to properly train police officers as to use of force, arrest powers, use of noxious gas and/or chemical agents and fundamental constitutional rights and its failure to supervise its officers in these regards constitute deliberate indifference to the rights of those who come into contact with the police.

80. The failure of Defendant City of Pittsburgh to properly supervise, discipline and otherwise reign in police officers known to have violent tendencies and/or who have displayed a

pattern of disregarding established constitutional and civil rights constitutes deliberate indifference to the rights of those who come into contact with those police officers.

## VI. PRAYER FOR RELIEF

Wherefore, Plaintiff Kimberly Latta respectfully requests that the Court:

1. exercise jurisdiction over this action;

2. issue appropriate declaratory relief to the effect that Defendants violated her civil rights;

3. award appropriate compensatory damages against all Defendants;

4. award appropriate punitive damages against each of the individual Defendants; and

4. grant such other relief as may be appropriate, including the award of reasonable attorneys' fees, litigation expenses, and costs.

**JURY TRIAL DEMANDED**

S/ Jon Pushinsky
Jon Pushinsky
Pa. I.D. No. 30434
1808 Law and Finance Building
429 Fourth Avenue
Pittsburgh, PA 15219
(412) 281-6800

Lawyer for Plaintiff

## VERIFICATION

I, Kimberly Latta, do hereby verify that the statements and averments of fact contained in the foregoing Verified Civil Action Complaint are true and correct according to my own personal knowledge, information and/or belief. I understand that false statements contained therein would possibly subject me to the penalties provided for by 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

7 Jan 2021
Date

Kimberly Latta